## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AMERICAN SECURITIES
ASSOCIATION,

PLAINTIFF,

v.

U.S. DEPARTMENT OF LABOR;
MARTY WALSH, in his official
capacity as the Secretary of Labor,

DEFENDANTS.

CIVIL ACTION NO. _____

## COMPLAINT

Plaintiff American Securities Association ("ASA") brings this civil action against Defendants the U.S. Department of Labor ("Department" or "DOL") and Marty Walsh, in his official capacity as the Secretary of Labor, for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1.     Congress passed the Administrative Procedure Act (APA) to ensure that agencies follow constraints as they exercise their powers. "[F]ramed against a background of rapid expansion of the administrative process," the APA serves as "a check upon administrators whose zeal might otherwise . . . carr[y] them to excesses not contemplated in legislation creating their offices." *United States v. Morton Salt Co.*, 338 U.S. 632, 644 (1950).

2. The APA's requirement that agencies engage in notice-and-comment rulemaking is one of the law's most important checks on agency power. By requiring notice and an opportunity to comment, the APA ensures that "agency regulations are tested via exposure to diverse public comment" and that there is "fairness to affected parties." *Int'l Union v. MSHA*, 407 F.3d 1250, 1260 (D.C. Cir. 2005). "Equally important, by mandating 'openness, explanation, and participatory democracy' in the rulemaking process, these procedures assure the legitimacy of administrative norms." *Air Transport Ass'n of Am. v. Dep't of Transp.*, 900 F.2d 369, 375 (D.C. Cir. 1990).

3. The APA also requires agencies to comply with their own regulations. If an agency wants to amend its regulations, it must "use the same procedures" that "it used to issue the rule in the first instance." *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 101 (2015). An agency cannot evade notice-and-comment requirements by "calling a substantive regulatory change" a mere "interpretation" of its existing rules. *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 35 (D.C. Cir. 2005).

4. ASA brings this action because the Department has violated its obligations under the APA.

5. In April 2021, the Department released a series of "frequently asked questions" in which the agency claimed to provide "guidance" on the requirements of its existing rules. In reality, however, the Department issued these

FAQs to impose new obligations that have no basis in the agency's underlying rules. Two FAQs are particularly egregious.

6. In FAQ 7, the Department rewrote its regulations concerning when a financial professional serves as a "fiduciary" under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Internal Revenue Code. According to the Department, a financial professional's *first instance* of advice to rollover assets from one retirement plan to another can be the act of a "fiduciary," even though the Department's regulations state that a person is *not* a fiduciary unless he provides advice "on a regular basis to the plan."

7. Likewise, in FAQ 15, the Department imposes a host of burdensome documentation and investigation requirements on financial institutions when making rollover recommendations, despite the fact that the exemption the Department promulgated contains no such requirements.

8. The APA prohibits agencies from regulating in this manner. If the Department wanted to change its rules, it needed to do so through the required notice-and-comment process—not through guidance documents.

9. The policies referenced in FAQ 7 and FAQ 15 are unlawful and violate the APA. The FAQs should be vacated and the Department should be enjoined from implementing or enforcing them in any manner.

**PARTIES**

10.    The American Securities Association is a trade association that represents the retail and institutional capital markets interests of regional financial services firms who provide Main Street businesses with access to capital and advise hardworking Americans how to create and preserve wealth. The ASA's mission is to promote trust and confidence among investors, facilitate capital formation, and support efficient and competitively balanced capital markets. This mission advances financial independence, stimulates job creation, and increases prosperity. The ASA has a geographically diverse membership base that spans the Heartland, Southwest, Southeast, Atlantic, and Pacific Northwest regions of the United States. The ASA brings this action on behalf of its members.

11.    Defendant U.S. Department of Labor is an agency of the United States government subject to the APA. *See* 5 U.S.C. §551(1).

12.    Defendant Marty Walsh is the U.S. Secretary of Labor. The Secretary is sued in his official capacity as the head of the Department of Labor.

**JURISDICTION & VENUE**

13.    This Court has subject-matter jurisdiction over this case because it arises under the laws of the United States. *See* 5 U.S.C. §§701, *et seq.*; 28 U.S.C. §§1331, 2201-2202.

14.    Venue is proper in this Court under 28 U.S.C. §1391(e) because this is an action against an officer and an agency of the United States, the ASA resides in

this judicial district, and no real property is involved in the action. The ASA resides in this judicial district because Tampa is the ASA's "principal place of business." 28 U.S.C. §1391(c)(2); *see Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) ("principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities"). Venue is proper in the Tampa Division of this Court because the ASA resides in this division. *See* M.D. Fla. L. R. 1.04(b).

BACKGROUND

## I.   The Regulation of Fiduciaries Under ERISA

15.   Individuals often save for retirement through employer-sponsored retirement plans. Employer-sponsored plans are regulated under Title I of ERISA.

16.   ERISA designates certain service providers to plans as fiduciaries and subjects them to duties of loyalty and prudence. 29 U.S.C. §1104(a)(1)(A)-(B).

17.   Under ERISA, a person is a "fiduciary" with respect to a plan to the extent he, among other things, "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." *Id.* §1002(21)(A)(ii).

18.   ERISA bars fiduciaries from engaging in certain "prohibited transactions," including transactions in which the fiduciary receives a commission paid by a third party or compensation that varies based on the advice that is provided. *Id.* §1106(b)(3).

19.     ERISA authorizes the Department to grant exemptions from transactions that would otherwise be prohibited if certain criteria are satisfied. *Id.* §1108(a), (b). ERISA confers on the Department far-reaching regulatory authority over employer-sponsored retirement plans. *Chamber of Commerce v. U.S. Dep't of Labor*, 885 F.3d 360, 364 (5th Cir. 2018) (citing 29 U.S.C. §§1108(a)-(b), 1135).

## II.     The Regulation of Fiduciaries under the Internal Revenue Code

20.     Individuals also save for retirement through tax-deferred Individual Retirement Accounts ("IRAs") and similar accounts. 26 U.S.C. §4975(e)(1)(B). These accounts are regulated under the Internal Revenue Code, not ERISA.

21.     The Code contains a similar definition of "fiduciary," *id.* §4975(e)(3), and also identifies certain "prohibited transactions," *id.* §4975(c).

22.     Unlike fiduciaries to ERISA plans, fiduciaries to IRAs are not subject to statutory duties of loyalty and prudence. *Chamber of Commerce*, 885 F.3d at 364.

23.     The Department does not have the authority to supervise financial service providers to IRAs in parallel with its power over ERISA plans. *Id*. Instead, the Department is authorized only to grant exemptions from the prohibited transactions provision, 29 U.S.C. §1108(a), 26 U.S.C. §4975(c)(2), and to "define accounting, technical and trade terms" that appear in both laws, 29 U.S.C. §1135.

## III.    The 1975 Five-Part Test

24.     In 1975, the Department promulgated a five-part test for determining who is a fiduciary under the investment-advice provision of the definition in

ERISA and the Code. Under that test, a person is an investment-advice fiduciary when:

> Such person [1] renders advice to the plan as to the value of securities or other property, or makes recommendations as to the advisability of investing in, purchasing, or selling securities or other property; and [s]uch person . . . [r]enders [this] advice . . . [2] on a regular basis to the plan [3] pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan; that such services [4] will serve as a primary basis for investment decisions with respect to plan assets, and that such person will [5] render individualized investment advice to the plan based on the particular needs of the plan[.]

29 C.F.R. §2510.3-21(c)(1) (1975).

25.     This definition "captured the essence of a fiduciary relationship known to the common law as a special relationship of trust and confidence between the fiduciary and his client." *Chamber of Commerce*, 885 F.3d at 365.

## IV.     The 2016 Fiduciary Rule

26.     In 2016, the Department issued a package of new rules known as the "Fiduciary Rule." *See, e.g.,* Definition of the Term "Fiduciary"; Conflict of Interest Rule—Retirement Investment Advice, 81 Fed. Reg. 20946 (Apr. 8, 2016). The Fiduciary Rule had two primary components.

27.     First, the Fiduciary Rule adopted a broad definition of "fiduciary" that captured virtually all financial professionals who provide services to ERISA plans and IRAs, thereby subjecting these professionals to those laws' prohibited-transaction requirements. Second, the Rule created an exemption from these

prohibitions, but only if financial professionals complied with a new set of "best interest" obligations. *See Chamber of Commerce*, 885 F.3d at 366-67.

28. The Department adopted the Fiduciary Rule because, among other reasons, it believed there was insufficient regulation of investment decisions to roll over assets from ERISA plan accounts to IRAs. *See id.* at 365 (by requiring that the advice be given to the customer on a "regular basis to the plan," the five-part test "excluded one-time transactions like IRA rollovers").

29. In 2018, the U.S. Court of Appeals for the Fifth Circuit vacated the Fiduciary Rule. *Id.* at 388. The Fifth Circuit found, among other things, that the Fiduciary Rule was inconsistent with ERISA's "fiduciary" definition, as Congress had "codified the touchstone of common law fiduciary status—the parties' underlying relationship of trust and confidence." *Id.* at 369.

30. Importantly, a critical flaw of the Rule was that it dispensed with the "regular basis" prong of the five-part test. "For the past forty years, DOL ha[d] considered the hallmarks of an 'investment advice' fiduciary's business to be its 'regular' work on behalf of a client." *Id.* By eliminating this prong, the Fiduciary Rule had improperly sought to define as fiduciaries "virtually all financial and insurance professionals who do business with ERISA plans and IRA holders." *Id.* at 366.

31. The Fifth Circuit's opinion had the effect of reinstating the 1975 rules governing who is and is not an investment-advice fiduciary. Following the Fifth

- 8 -

Circuit's decision, the Department issued a technical amendment to the Code of Federal Regulations, which restored the text of the 1975 rules. *See* Conflict of Interest Rule—Retirement Investment Advice: Notice of Court Vacatur, 85 Fed. Reg. 40589, 40590-94 (July 7, 2020).

**V.    The 2020 Prohibited Transaction Exemption**

32.    In December 2020, the Department adopted "Prohibited Transaction Exemption 2020-02," a class exemption covering fiduciary investment advice to retirement investors, including in the context of rollovers. *See* Prohibited Transaction Exemption 2020-02, Improving Investment Advice for Workers & Retirees, 85 Fed. Reg. 82798, 82862-66 (Dec. 18, 2020) ("the Exemption").

33.    The Exemption permits financial institutions and investment professionals who provide "fiduciary investment advice" to retirement investors to "receive otherwise prohibited compensation." *Id.* at 82862 (Exemption §1(a)).

34.    To qualify under the Exemption, financial institutions and investment professionals must, among other things: (1) comply with "Impartial Conduct Standards," which includes providing advice that is in the "best interest of the retirement investor"; (2) provide various disclosures, including an acknowledgement of fiduciary status; (3) adopt policies and procedures that "mitigate" conflicts of interests; and (4) document the "specific reasons" that any recommendation to roll over assets is in the best interests of a retirement investor. *Id.* at 82863-64 (Exemption §2).

- 9 -

## VI.    The 2021 "Frequently Asked Questions"

35.    In April 2021, the Department issued a set of "Frequently Asked Questions." *See New Fiduciary Advice Exemption: PTE 2020-02 Improving Investment Advice for Workers & Retirees Frequently Asked Questions*, U.S. Dep't of Labor (Apr. 2021), bit.ly/3Bd17lX.

36.    Pointing to statements the Department made in the preamble to the Exemption, the FAQs purported to provide "guidance" on the five-part test and the Exemption. Two of the FAQs are relevant here.

### A.    FAQ 7

37.    Under the Department's regulations, a person is not an investment-advice fiduciary unless he renders investment advice "on a regular basis to the plan." 29 C.F.R. §2510.3-21(c)(1).

38.    FAQ 7 asks, "When is advice to roll over assets from an employee benefit plan to an IRA considered to be [] on a 'regular basis'?" *Frequently Asked Questions*, *supra*.

39.    In its answer, the Department states that the "regular basis" prong can be satisfied for a "recommendation to roll plan assets to an IRA" even when it is the "first instance of advice." *Id.*

40.    According to FAQ 7, this type of recommendation will be the act of an investment-advice fiduciary as long as the parties establish an "ongoing advice relationship" *after* the rollover is completed or the financial professional "*expects*

*to* regularly make investment recommendations regarding the IRA" going forward. *Id.* (emphasis added).

41.    Thus, under FAQ 7, a financial professional can be considered an investment-advice fiduciary when making a rollover recommendation even though he has not provided any advice on "a regular basis to the plan."

42.    As a consequence, FAQ 7 transforms countless one-time rollover recommendations into the acts of a fiduciary, despite the plain meaning of the five-part test, the Department's prior interpretation of its rules, and the common law understanding of a "fiduciary," which "turns on the existence of a relationship of trust and confidence between the fiduciary and client." *Chamber of Commerce*, 885 F.3d at 370.

### B.    FAQ 15

43.    The Exemption states that financial institutions must "document[] the specific reasons that any recommendation to roll over assets . . . is in the Best Interest of the Retirement Investor." Exemption §2(c)(3). The Exemption does not mandate any specific ways in which financial institutions must comply with this documentation requirement.

44.    FAQ 15, however, significantly expands financial institutions' documentation and investigation requirements under the Exemption.

45.    FAQ 15 asks, "What factors should financial institutions and investment professionals consider and document in their disclosure of the reasons

that a rollover recommendation is in a retirement investor's best interest?" *Frequently Asked Questions*, *supra*.

46.    In its answer to FAQ 15, the Department states that, for recommendations to roll over assets from an employee benefit plan to an IRA, financial institutions and investment professionals "must consider and document": (1) "the alternatives to a rollover, including leaving the money in the investor's employer's plan, if permitted"; (2) "the fees and expenses associated with both the plan and the IRA"; (3) "whether the employer pays for some or all of the plan's administrative expenses"; and (4) "the different levels of services and investments available under the plan and the IRA." *Id*.

47.    In addition, FAQ 15 states that financial institutions and investments professionals must "make diligent and prudent efforts to obtain information about the existing employee benefit plan and the participant's interests in it." *Id*. "If the retirement investor won't provide the information, even after a full explanation of its significance, and the information is not otherwise readily available," the financial institution and investment professional must "make a reasonable estimation of expenses, asset values, risk, and returns based on publicly available information." *Id*. The institution and professional then must "document and explain the assumptions used and their limitations." *Id*.

48.    Finally, for rollovers from another IRA or from a commission-based account to a fee-based arrangement, FAQ 15 requires financial institutions and

investment professionals to consider and document "services under the new arrangement." *Id*. This analysis must include "the long-term impact of any increased costs; why the rollover is appropriate notwithstanding any additional costs; and the impact of economically significant investment features such as surrender schedules and index annuity cap and participation rates." *Id*.

49.     Thus, even though the Exemption requires financial institutions to do nothing more than document their "specific reasons" for recommending a rollover, FAQ 15 subjects financial institutions to numerous documentation and investigation requirements that are contained nowhere in the Exemption.

**VII.   Field Assistance Bulletin (FAB) 2021-02**

50.     On October 25, 2021, the Department issued Field Assistance Bulletin (FAB) 2021-02. *See* FAB No. 2021-02 (Oct. 25, 2021), bit.ly/3CQRKcO. There, the Department cited FAQ 15 and noted that "financial institutions have expressed concern that they face significant challenges in implementing the rollover documentation and disclosure requirements by the December 20 deadline" and that "these challenges and concerns may delay their ability to rely on the exemption."

51.     The Department thus found it appropriate to provide "transition relief" from the documentation requirements it had imposed. Specifically, the Department stated that it "will not enforce the specific documentation and disclosure requirements for rollovers in PTE 2020-02 through June 30, 2022." *Id*.

## VIII.   The Impact of the FAQs on the Plaintiff's Members

52.   The Department's actions have harmed and will continue to harm ASA and its members.

53.   The ASA has members that, because of the Department's pronouncements in FAQ 7, prohibit their investment advisors from recommending that an investor roll over assets out of an employee benefit plan. Absent the Department's pronouncements, these members would allow their investment advisors, when appropriate, to recommend that investors roll over assets out of an employee benefit plan, even if it was the advisor's first contact with the investor.

54.   The ASA has members that will comply with the Department's documentation requirements in FAQ 15. These requirements, however, are burdensome, expensive, and time-consuming. The ASA's members would not endure these costs and burdens but for the Department's pronouncements about the documentation required to comply with the Exemption. The ASA also has members that, because of the Department's pronouncements in FAQ 15, will not utilize the Exemption to engage in the activities the Exemption explicitly permits.

### CLAIMS FOR RELIEF

### COUNT I
### Administrative Procedure Act, 5 U.S.C. §706(2)(D)
### FAQ 7

55.   Plaintiff incorporates all of its prior allegations.

56.     The APA requires courts to "hold unlawful and set aside agency action[s]" that are adopted "without observance of procedure required by law." 5 U.S.C. §706(2)(D).

57.     Under the APA, all "rules" must be issued through a statutorily prescribed notice-and-comment process. *See* 5 U.S.C. § 553(a)-(c).

58.     Rules issued through the notice-and-comment process are often referred to as "legislative rules" because they have the "force and effect of law." *Perez*, 575 U.S. at 96.

59.     By contrast, the notice-and-comment process does not apply to "interpretive rules." 5 U.S.C. §553(b)(A).

60.     A pronouncement from an agency is legislative if it "effectively amends a prior legislative rule." *Am. Min. Cong. v. MSHA*, 995 F.2d 1106, 1112 (D.C. Cir. 1993).

61.     Under the Department's regulations, a financial professional is not an investment-advice fiduciary unless he or she satisfies a five-part test. 29 C.F.R. §2510.3-21(c)(1). This test "capture[s] the essence of a fiduciary relationship" by ensuring that there is "a special relationship of trust and confidence between the fiduciary and his client." *Chamber of Commerce*, 885 F.3d at 365.

62.     To satisfy the five-part test, a financial professional must, among other things, "[r]ender[] [investment] advice . . . on a regular basis to the plan." 29 C.F.R. §2510.3-21(c)(1).

63.    Because of this "regular basis" prong, the Department's regulations never considered a financial professional who recommends that an investor roll over assets out of an employee benefit plan to be a "fiduciary" if this was the professional's first recommendation to the investor.

64.    That is because, at the time the recommendation was made, the professional could not have been rendering advice on a "regular basis to the plan." 29 C.F.R. §2510.3-21(c)(1); *see also* Definition of the Term "Fiduciary"; Conflict of Interest Rule—Retirement Investment Advice, 81 Fed. Reg. 20946-01, 20955 (Apr. 8, 2016) ("[T]he 'regular basis' requirement . . . deprives individual participants and IRA owners of statutory protection when they seek specialized advice on a one-time basis, even if the advice concerns the investment of all or substantially all of the assets held in their account (e.g., as in the case of an annuity purchase or a rollover from a plan to an IRA or from one IRA to another.").

65.    In FAQ 7, however, the Department concludes that the "regular basis" prong means nearly the opposite of what it has meant for more than 40 years.

66.    According to FAQ 7, the "regular basis" prong will be satisfied for a "recommendation to roll plan assets to an IRA," even when it is the "first instance of advice," if the financial professional and investor establish an "ongoing advice relationship" in the future or if the financial professional "*expects to* regularly make

investment recommendations regarding the IRA as part of an ongoing relationship."

67.    FAQ 7 is a procedurally improper "legislative rule" because it effectively amends a prior legislative rule.

68.    Because FAQ 7 is a legislative rule that did not go through the proper notice-and-comment process, the policies referenced in the FAQ must be held unlawful and set aside.

## COUNT II
## Administrative Procedure Act, 5 U.S.C. §706(2)(A)
## FAQ 7

69.    Plaintiff incorporates all of its prior allegations.

70.    The APA requires courts to "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

71.    An agency's pronouncement of what its regulations require is arbitrary and capricious if the pronouncement is unreasonable or is inconsistent with the regulation's plain meaning. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414-19 (2019).

72.    Under the Department's regulations, a financial professional is not an investment-advice fiduciary unless he or she satisfies a five-part test. 29 C.F.R. §2510.3-21(c)(1). This test "capture[s] the essence of a fiduciary relationship" by ensuring that there is "a special relationship of trust and confidence between the fiduciary and his client." *Chamber of Commerce*, 885 F.3d at 365.

73.    To satisfy the five-part test, a financial professional must, among other things, "[r]ender[] [investment] advice . . . on a regular basis to the plan." 29 C.F.R. §2510.3-21(c)(1).

74.    Because of this "regular basis" prong, the Department's regulations never considered a financial professional who recommends that an investor roll over assets out of an employee benefit plan to be a "fiduciary" if this was the professional's first recommendation to the investor. That is because, at the time the recommendation was made, the professional could not have been rendering advice on a "regular basis to the plan." 29 C.F.R. §2510.3-21(c)(1); *see also* Definition of the Term "Fiduciary"; Conflict of Interest Rule—Retirement Investment Advice, 81 Fed. Reg. 20946-01, 20955 (Apr. 8, 2016) ("[T]he 'regular basis' requirement . . . deprives individual participants and IRA owners of statutory protection when they seek specialized advice on a one-time basis, even if the advice concerns the investment of all or substantially all of the assets held in their account (e.g., as in the case of an annuity purchase or a rollover from a plan to an IRA or from one IRA to another.").

75.    In FAQ 7, however, the Department concludes that the "regular basis" prong means nearly the opposite of what it has meant for more than 40 years.

76.    According to FAQ 7, the "regular basis" prong will be satisfied for a "recommendation to roll plan assets to an IRA," even when it is the "first instance

of advice," if the financial professional and investor establish an "ongoing advice relationship" in the future or if the financial professional "*expects to* regularly make investment recommendations regarding the IRA as part of an ongoing relationship."

77.    FAQ 7 is unreasonable and inconsistent with the plain meaning of the five-part test and the Department's statutory authority under ERISA and the Code.

78.    Because FAQ 7 is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), the policies referenced in the FAQ must be held unlawful and set aside.

**COUNT III**
**Administrative Procedure Act, 5 U.S.C. §706(2)(D)**
**FAQ 15**

79.    Plaintiff incorporates all of its prior allegations.

80.    The APA requires courts to "hold unlawful and set aside agency action[s]" that are adopted "without observance of procedure required by law." 5 U.S.C. §706(2)(D).

81.    Under the APA, all "rules" must be issued through a statutorily prescribed notice-and-comment process. *See* 5 U.S.C. § 553(a)-(c).

82.    Rules issued through the notice-and-comment process are often referred to as "legislative rules" because they have the "force and effect of law." *Perez*, 575 U.S. at 96.

83.    By contrast, the notice-and-comment process does not apply to "interpretive rules." 5 U.S.C. §553(b)(A).

84.    A pronouncement from an agency is legislative if it "effectively amends a prior legislative rule." *Am. Min. Cong.*, 995 F.2d at 1112.

85.    In addition, a rule is legislative if it "expand[s] the footprint of a regulation by imposing new requirements." *Iowa League of Cities v. EPA*, 711 F.3d 844, 873 (8th Cir. 2013).

86.    Courts place limits on agency attempts to justify an agency action as simply "resolv[ing] an ambiguity inherent in its statutory and regulatory authority." *EPIC v. DHS*, 653 F.3d 1, 7 (D.C. Cir. 2011). That is because "the purpose of the APA would be disserved if an agency with a broad statutory command . . . could avoid notice-and-comment rulemaking simply by promulgating a comparably broad regulation . . . and then invoking its power to interpret that statute and regulation in binding the public to a strict and specific set of obligations." *Id.*

87.    FAQ 15 is a procedurally improper legislative rule because it imposes new requirements on regulated entities that are not contained in the Exemption.

88.    The Exemption requires financial institutions only to "document[] the specific reasons that any recommendation to roll over assets . . . is in the Best Interest of the Retirement Investor." Exemption §2(c)(3).

89.     FAQ 15, however, imposes significant new documentation and investigation requirements that are nowhere contained in the Exemption. For example, to "satisfy the documentation requirement for rollovers," FAQ 15 requires financial institutions to "make diligent and prudent efforts to obtain information about the existing employee benefit plan and the participant's interests in it." If the investor won't provide the information, the financial institution must "make a reasonable estimation of expenses, asset values, risk, and returns based on publicly available information" and must "document and explain the assumptions used and their limitations."

90.     Because FAQ 15 is a legislative rule that did not go through the notice-and-comment process, the policies referenced in the FAQ must be held unlawful and set aside.

## COUNT IV
## Administrative Procedure Act, 5 U.S.C. §706(2)(A)
## FAQ 15

91.     Plaintiff incorporates all of its prior allegations.

92.     The APA requires courts to "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

93.     An agency's pronouncement of what its regulations require is arbitrary and capricious if the pronouncement is unreasonable or is inconsistent with the regulation's plain meaning. *Kisor*, 139 S. Ct. at 2414-19.

94.    The Exemption requires financial institutions only to "document[] the specific reasons that any recommendation to roll over assets . . . is in the Best Interest of the Retirement Investor." Exemption §2(c)(3).

95.    FAQ 15, however, imposes significant new documentation requirements that are nowhere contained in the Exemption. For example, to "satisfy the documentation requirement for rollovers," FAQ 15 requires financial institutions to "make diligent and prudent efforts to obtain information about the existing employee benefit plan and the participant's interests in it." If the investor won't provide the information, the financial institution must "make a reasonable estimation of expenses, asset values, risk, and returns based on publicly available information" and must "document and explain the assumptions used and their limitations."

96.    The Exemption is unambiguous. Financial institutions need only "document[] the specific reasons that any recommendation to roll over assets . . . is in the Best Interest of the Retirement Investor." Exemption §2(c)(3). While a financial institution *could* document the items required in FAQ 15, nothing in the Exemption *requires* it to do so.

97.    Because FAQ 15 is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), the policies referenced in the FAQ must be held unlawful and set aside.

- 22 -

**WHEREFORE**, Plaintiff asks this Court to enter judgment in its favor and to provide it with the following relief:

a. Declare that the policies referenced in FAQ 7 and FAQ 15 have been imposed without observance of procedure required by law and therefore violate the APA.

b. Declare that the policies referenced in FAQ 7 and FAQ 15 are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

c. Enjoin the Defendants from enforcing, applying, or implementing the policies referenced in FAQ 7 and FAQ 15 anywhere within the Department's jurisdiction.

d. Vacate and set aside the policies referenced in FAQ 7 and FAQ 15.

e. Award all other relief to which Plaintiff is entitled, including but not limited to Plaintiff's attorneys' fees and costs.

f. Grant all other relief that this Court deems just and proper.

Respectfully submitted,

Dated: February 9, 2022

s/  *Daniel Shapiro*

J. Michael Connolly (*pro hac vice* forthcoming)
Steven C. Begakis (*pro hac vice* forthcoming)
Daniel Shapiro (FL Bar #1011108)
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com
daniel@consovoymccarthy.com

*Counsel for Plaintiff American Securities
Association*