## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AMERICAN SECURITIES
ASSOCIATION,

|  |  |
|---|---|
| Plaintiff, | Civil Action No. 8:22-cv-330 |
| v. | |
| U.S. DEPARTMENT OF LABOR; MARTY WALSH, in his official capacity as the Secretary of Labor, | |
| Defendants. | |

## PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

J. Michael Connolly (*pro hac vice*)
Steven C. Begakis (*pro hac vice*)
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com

*Counsel for Plaintiff American Securities Association*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ............................................................................... 1

RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS ............... 4

ARGUMENT ..................................................................................... 5

I.   ASA has Article III standing. ................................................. 5

   A.   ASA has suffered an injury-in-fact. ................................. 6

   B.   ASA's injuries are traceable to the challenged policies. ..... 11

   C.   ASA's injuries are redressable by a favorable decision. ..... 14

II.   The Department's pronouncements in FAQ 7 violate the APA. ...... 16

   A.   The Department's pronouncements in FAQ 7 improperly amend the Department's rules without notice and comment. ............... 16

   B.   The Department's pronouncements in FAQ 7 are arbitrary and capricious. ............................................................. 21

III.   The Department's pronouncements in FAQ 15 violate the APA. ..... 25

   A.   The Department's pronouncements in FAQ 15 improperly amend the Department's rules without notice and comment. ............... 25

   B.   The Department's pronouncements in FAQ 15 are arbitrary and capricious. ............................................................. 27

IV.   The Department's interpretations are not entitled to deference ...... 28

CONCLUSION .................................................................................. 30

# TABLE OF AUTHORITIES

## CASES

*AFL-CIO v. Donovan,*
  757 F.2d 330 (D.C. Cir. 1985) ....................................................................29

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,*
  781 F.3d 1271 (11th Cir. 2015) .................................................................15

*Bonnichsen v. United States,*
  367 F.3d 864 (9th Cir. 2004) .....................................................................24

*Cal. Wilderness Coal. v. U.S. Dep't of Energy,*
  631 F.3d 1072 (9th Cir. 2011) .............................................................20, 26

*Carpenters Indus. Council v. Zinke,*
  854 F.3d 1 (D.C. Cir. 2017) .......................................................................15

*Chamber of Commerce v. DOL,*
  885 F.3d 360 (5th Cir. 2018) ...............................................................18, 25

*Chamber of Commerce v. OSHA,*
  636 F.2d 464 (D.C. Cir. 1980) ...................................................................17

*Children's Hosp. of the King's Daughters, Inc. v. Azar,*
  896 F.3d 615 (4th Cir. 2018) .....................................................................14

*City of Waukesha v. EPA,*
  320 F.3d 228 (D.C. Cir. 2003) .....................................................................7

*Contender Farms, LLP v. U.S. Dep't of Agric.,*
  779 F.3d 258 (5th Cir. 2015) ...........................................................6, 8, 9, 10

*Cotton v. Mass. Mut. Life Ins. Co.,*
  402 F.3d 1267 (11th Cir. 2005) .............................................................8, 23

*Czyzewski v. Jevic Holding Corp.,*
  137 S. Ct. 973 (2017) .................................................................................10

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006).......................................................................10

*EPIC v. DHS*,
   653 F.3d 1 (D.C. Cir. 2011) ........................................................................25

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005) .....................................................................................23

*FEC v. Cruz*,
   142 S. Ct. 1638 (2022) .................................................................................15

*FTC v. IAB Mktg. Assocs., LP*,
   972 F. Supp. 2d 1307 (S.D. Fla. 2013).............................................24, 28, 30

*Fund For Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ....................................................................5, 6

*Gen. Motors Cop. v. Ruckelshaus*,
   742 F.2d 1561 (D.C. Cir. 1984) ...................................................................17

*Greater Birmingham Ministries v. Sec'y of State for State of Ala.*,
   992 F.3d 1299 (11th Cir. 2021) .....................................................................5

*Health Freedom Def. Fund, Inc. v. Biden*,
   2022 WL 1134138 (M.D. Fla. Apr. 18)...........................................14, 20, 21

*Hemp Indus. Ass'n v. Drug Enf't Admin.*,
   333 F.3d 1082 (9th Cir. 2003) .....................................................................17

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) .......................................................................................5

*Iowa League of Cities v. EPA*,
   711 F.3d 844 (8th Cir. 2013) .......................................................................17

*ITPE Pension Fund v. Hall*,
   334 F.3d 1011 (11th Cir. 2003) ...................................................................23

*Kilpatrick v. Kilpatrick*,
   2013 WL 3874767 (Tex. App. 2013)............................................................24

*Kimelman v. Garland*,
   2022 WL 621401 (D.D.C. Mar. 3, 2022)...............................................13, 15

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) ................................................................19, 28, 29, 30

*Kursar v. TSA*,
   751 F. Supp. 2d 154 (D.D.C. 2010) ................................................................16

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008) ................................................................22

*Loving v. IRS*,
   742 F.3d 1013 (D.C. Cir. 2014) ................................................................30

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................5, 6, 11

*Mendoza v. Perez*,
   754 F.3d 1002 (D.C. Cir. 2014) ................................................................13, 19

*Mountain States Health All. v. Burwell*,
   128 F. Supp. 3d 195 (D.D.C. 2015) ................................................................27

*Mulhall v. UNITE HERE Local 355*,
   618 F.3d 1279 (11th Cir. 2010) ................................................................14

*N.H. Hosp. Ass'n v. Azar*,
   887 F.3d 62 (1st Cir. 2018) ................................................................13, 19

*New York v. U.S. Dep't of Lab.*,
   477 F. Supp. 3d 1 (S.D.N.Y. 2020) ................................................................10

*Outley v. City of Chi.*,
   407 F. Supp. 3d 752 (N.D. Ill. 2019) ................................................................25

*Perez v. Mortg. Bankers Ass'n*,
   575 U.S. 92 (2015) ................................................................19, 20

*Shell Oil Co. v. EPA*,
   950 F.2d 741 (D.C. Cir. 1991) ................................................................26

*Speech First, Inc. v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022) ................................................................6

*Sturgeon v. Frost*,
    139 S. Ct. 1066 (2019) ................................................................................7

*Texas Brine Co., LLC v. Am. Arb. Ass'n, Inc.*,
    955 F.3d 482 (5th Cir. 2020) ..................................................................23

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    137 S. Ct. 2012 (2017) ..............................................................................9

*U.S. Steel Corp. v. EPA*,
    595 F.2d 207 (5th Cir. 1979) .....................................................20, 21, 26

*United States v. Dean*,
    604 F.3d 1275 (11th Cir. 2010) ..............................................................20

*United States v. One (1) Douglas A-26B Aircraft*,
    662 F.2d 1372 (11th Cir. 1981) ..............................................................22

*United States v. SCRAP*,
    412 U.S. 669 (1973) ...............................................................................10

*United States v. U.S. Stem Cell Clinic, LLC*,
    998 F.3d 1302 (11th Cir. 2021) ..............................................................28

*Warshauer v. Solis*,
    577 F.3d 1330 (11th Cir. 2009) ..............................................................17

*York v. Wellmark, Inc.*,
    2017 WL 11261026 (S.D. Iowa 2017) ...................................................19

## OTHER AUTHORITIES

29 C.F.R. §2510.3-21 ......................................................................8, 21, 22

Merriam-Webster,
    https://bit.ly/3IUsKFm .............................................................................24

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ....................23

Webster's New World College Dictionary (4th ed.),
    https://bit.ly/3IzKYfv .............................................................................27

**INTRODUCTION**

The Department of Labor does not dispute the key facts. In 2018, the Fifth Circuit vacated the Department's Fiduciary Rule, which had imposed fiduciary status on individuals making one-time rollover recommendations. Rather than amend its rules again, the Department issued a new "interpretation" of its decades-old regulations. For the first time ever, the Department declared that financial services providers (like ASA's members) would be acting as a "fiduciary" under its five-part test by making certain one-time rollover recommendations. The Department also imposed a host of new documentation and investigation requirements on entities seeking an exemption from the Department's new interpretation—requirements that are nowhere in the text of the actual exemption. The Department made these pronouncements in the preamble to the exemption, and a few months later it issued FAQs containing "materially indistinguishable" policies. Because of these pronouncements, one of ASA's members (Baird) does not make rollover recommendations to investors and does not utilize the exemption, and another ASA member (Stephens) must expend significant costs and resources to comply with the pronouncements.

Because the Department's pronouncements did not go through notice and comment and conflict with a plain reading of the Department's regulations, ASA filed suit, asking the Court to declare these policies unlawful, enjoin the Department from enforcing them, and vacate and set them aside.

1

None of the Department's defenses has merit. The Department puzzlingly claims that ASA lacks standing. But ASA's members are "objects of the regulation" and so their standing is "self-evident." The Department's pronouncements either prohibit or require actions from ASA's members. These are classic injuries in APA cases. The Department's assertion that ASA challenged the wrong policies is even stranger. ASA challenged "the policies referenced in the FAQ[s]" and it asks the Court to declare the policies unlawful, enjoin the Department from enforcing them, and vacate and set them aside. As the Department repeatedly emphasizes, the policies referenced in the FAQs are "identical" to the policies contained in the preamble to the exemption. The Department's apparent theory—that ASA has no cognizable injuries because the Department articulated the same policies in more than one place—has no support in the caselaw.

The Department's arguments on the merits are similarly weak. The Department contends that the pronouncements in FAQ 7 are procedurally proper because the agency described them as "interpretive." But courts give little weight to such self-serving characterizations. Nor does the fact that the Department received comments on these pronouncements after proposing them in a preamble satisfy the APA's procedural requirements. If the Department wanted to change its policies, it needed *to amend its rules*—not change them through an "interpretation." As to the substance, the Department does not deny that it used to interpret the "regular basis" prong the same as ASA does now. Yet now it

contends that ASA's interpretation somehow causes "absurd outcomes." The Department's textual analysis is perfunctory and unpersuasive, failing to even respond to all of ASA's arguments.

On the pronouncements in FAQ 15, the Department remarkably makes *no argument* that they are procedurally proper. The Department's sole argument is that they should be deemed "harmless error" because ASA previously filed comments on the Exemption. But notice-and-comment violations are rarely, if ever, upheld as harmless error. And this case is no different. The Department's defense of the pronouncements in FAQ 15 on the merits is similarly sparse. The Department contends that the myriad documentation and investigation requirements in FAQ 15 are simply a "logical" interpretation of what an advisor should do to show the "specific reasons" he made a rollover recommendation. But no fair reading of the Exemption supports these pronouncements.

As a last resort, the Department asks the Court to defer to its interpretations. But such deference rarely applies and is not warranted here. The regulations at issue are not "genuinely ambiguous," and the Department's interpretations are not "reasonable"—both of which are prerequisites for receiving deference. Such deference is especially unwarranted for the pronouncements in FAQ 7, which "interpret" a decades-old regulation in a way that flatly contradicts the Department's prior interpretation.

The Court should grant ASA's motion for summary judgment.

3

**RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS**

1.      The Department's assertions that the Exemption "went through notice-and-comment rulemaking" and that ASA participated in the "notice-and-comment process" are improper legal arguments. *See* Dkt. 36 at 2 ("Legal argument should not be included in the statement of material facts."). ASA denies that the pronouncements at issue in this case went through the proper notice-and-comment process. *See* ASA Mot. 18-19; *infra* 19. ASA admits that it filed the document at AR 378 with the Department in August 2020.

2.      ASA admits that the quoted language appears at AR 2 and that the Department purported to announce a new "interpretation" of the five-part test in the preamble.

3.      The Department's characterization of the relief ASA seeks in its complaint is an improper legal argument. *See* Dkt. 36 at 2. Regardless, ASA does seek relief from certain pronouncements made in the preamble to the Exemption. *See infra* 11-16.

4.      The Department's characterization of the relevant documents is an improper legal argument. *See* Dkt. 36 at 2. The documents speak for themselves. ASA agrees that "[t]he language included in the response to FAQ 7 and FAQ 15 is materially indistinguishable from language included in the preamble."

5.      The Department's characterization of the relevant documents is an improper legal argument. *See* Dkt. 36 at 2. The documents speak for themselves.

4

## ARGUMENT

### I.   ASA has Article III standing.

An association like ASA has standing if "its members would otherwise have standing to sue in their own right," the "interests it seeks to protect are germane to the organization's purpose," and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Department argues that ASA cannot satisfy the first *Hunt* requirement because ASA's members lack standing. Dep't Opp. 14-28.[1] That argument fails.

That the Department challenges ASA's standing is surprising. When a plaintiff is "an object of the [regulatory] action" at issue, there is "ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992). In these situations, the plaintiff's "'standing to seek review of [the] administrative action is *self-evident*.'" *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (emphasis added).

Here, ASA's members are objects of the challenged regulatory actions at issue because the Department's pronouncements target their activities. ASA Mot.

---

[1] ASA satisfies the remaining *Hunt* factors because this lawsuit is germane to ASA's purpose, *see* ASA Mot. 4, ¶3, and the claims and relief requested do not require the participation of ASA's individual members, *see Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021).

4-5, ¶¶4-6; *see, e.g.*, *Contender Farms, LLP v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015) (plaintiffs "are objects of the [agency's] Regulation because they participate in the type of events that the Regulation seeks to regulate"). And the Department never argues otherwise. There thus is "little question" that ASA has standing. *Lujan*, 504 U.S. at 561-62.

But "even if [the Court] were to harbor any doubts about [ASA's] standing, they would be dissipated by evidence in [the] record." *Fund For Animals*, 322 F.3d at 734. ASA has shown (through undisputed evidence) injury-in-fact, causation, and redressability.

### A.    ASA has suffered an injury-in-fact.

A plaintiff satisfies the injury-in-fact prong when it shows "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022). Here, ASA satisfies these requirements because the record—which is undisputed, *see* Dep't Opp. 13, ¶¶4-6—shows that two of ASA's members (Baird and Stephens) are injured by the pronouncements in FAQ 7 and FAQ 15, ASA Mot. 4-5, ¶¶4-6.

Specifically, Baird "prohibits its investment advisors from recommending that investors roll over assets out of an employee benefit plan out of concern that such advice will confer ERISA fiduciary status under the Department's pronouncements in FAQ 7." ASA Mot. 4, ¶4. "Absent these pronouncements,

[Baird] would allow its investment advisors, when appropriate, to recommend that investors roll over assets out of an employee benefit plan, even if it was the advisor's first contact with the investor." *Id.* Baird also "will not utilize the December 2020 Exemption to avoid the costs of complying with the Department's requirements set forth in FAQ 15." *Id.* at 5, ¶6. "Absent the Department's pronouncements in FAQ 15, [Baird] would utilize the Exemption to engage in the activities that the Exemption explicitly permits." *Id.*

In addition, Stephens "will utilize the December 2020 Exemption but is now expending additional time and resources to comply with the Department's requirements in FAQ 15." *Id.* at 5, ¶5. For example, Stephens must "purchase expensive software to comply with these requirements and its advisors must devote numerous hours complying with the Department's new documentation requirements." ASA Mot., Ex. C (Palermo Decl.) 4, ¶10. Stephens "would not endure these costs and burdens but for the Department's pronouncements about the documentation required to comply with the Exemption." ASA Mot. 5, ¶5.

These are paradigmatic injuries-in-fact in APA claims. Baird is not taking actions because of the pronouncements in FAQ 7 and FAQ 15. *See, e.g.*, *Sturgeon v. Frost*, 139 S. Ct. 1066, 1077, 1087 (2019) (plaintiff injured where agency regulations prohibited him from using his hovercraft on an Alaskan river). And Stephens is enduring costs and administrative burdens because of the pronouncements in FAQ 15. *See, e.g.*, *City of Waukesha v. EPA*, 320 F.3d 228, 235-37 (D.C. Cir. 2003)

7

(higher "'regulatory compliance costs'" are "sufficient to demonstrate injury-in-fact"); *Contender Farms,* 779 F.3d at 266 ("An increased regulatory burden typically satisfies the injury in fact requirement.").

The Department argues that Baird is not injured by the pronouncements in FAQ 7 because Baird already "behave[s] as [a] fiduciar[y]" so the pronouncements in FAQ 7 "do[] not materially affect its operations." Dep't Opp. 18. This makes no sense. Baird cannot "behave as a fiduciary" with respect to rollover recommendations because it is not making such recommendations. ASA Mot. 4, ¶4; *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005) (a party is a fiduciary under ERISA only "'with respect to the particular activity at issue'" and only to the extent that it "performs a fiduciary function"). That Baird's mission is to "help [its clients] create great outcomes in their financial life'" and to "'always keep[] their interests first,'" Dep't Opp. 16 (quoting ASA Mot., Ex. B (Shultz Decl.) 1, ¶3), doesn't make Baird a fiduciary under the five-part test, *see* 29 C.F.R. §2510.3-21(c)(1); *Cotton*, 402 F.3d at 1277. And the pronouncements in FAQ 7 *do* affect Baird's operations. Absent these pronouncements, Baird "would allow its investment advisors, when appropriate, to recommend that investors roll over assets out of an employee benefit plan, even if it was the advisor's first contact with the investor." ASA Mot. 4, ¶4.

The Department further contends that Baird and Stephens are not injured because the pronouncements in FAQ 7 and FAQ 15 do not "command anything"

8

but merely provide "a benefit" for those that comply with the Exemption's requirements. Dep't Opp. 18-19, 21. Unsurprisingly, the Department provides no case to support this argument. Nor could it. A plaintiff has standing when it is denied a government benefit. *See, e.g.*, *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2017 (2017) (church injured when disqualified "from receiving grants under its playground resurfacing program"); *Contender Farms*, 779 F.3d at 266 (plaintiffs had standing even though the regulation did not "'force[]'" them to do anything). Regardless, the Department's policies are not merely "benefits." The pronouncements in FAQ 7 *prohibit* ASA's members from engaging in certain practices by redefining when an entity is acting as a "fiduciary." ASA Mot. 4, ¶4. And the pronouncements in FAQ 15 *prohibit* ASA's members from utilizing the Exemption unless they comply with certain documentation and investigation requirements. ASA Mot. 5, ¶¶5-6. These are classic injuries-in-fact. *Supra* 7-8.

Nor must ASA prove that its members' "additional expenses incurred" by these requirements won't "be offset by financial gains made by ASA members when they were permitted to receive otherwise-prohibited compensation." Dep't Opp. 21. The pronouncements in FAQ 15 impose unlawful costs and burdens on ASA's members; whether ASA's members will benefit financially from complying with the Exemption is irrelevant. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 265

(2d Cir. 2006) ("[T]he fact that an injury may be outweighed by other benefits . . . does not negate standing.").

The Department contends that Stephens' costs and burdens are "unduly vague and insufficiently 'concrete'" because ASA did not identify the precise expenses and numbers of hours Stephens will need to spend to comply with the pronouncements in FAQ 15. Dep't Opp. 20-21. But "no precedent requires the Court to disregard non-quantitative evidence, or to demand specific numerical projections." *New York v. U.S. Dep't of Lab.*, 477 F. Supp. 3d 1, 8 (S.D.N.Y. 2020). "To the contrary, because even 'an identifiable trifle' suffices to demonstrate standing, all [the plaintiff] must show is that it will be injured, not the magnitude of its injury." *Id.* (quoting *United States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973)); *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) (a "loss of even a small amount of money" is a cognizable injury). And it is undisputed that Stephens must buy "expensive software" because of the pronouncements in FAQ 15. Palermo Decl. 4, ¶10; *see* ASA Mot. 5. Moreover, an "increased regulatory burden" is a sufficient injury-in-fact, *Contender Farms*, 779 F.3d at 266, and Stephens' "advisors must devote numerous hours complying with the Department's new documentation requirements," Palermo Decl. 4 ¶10; *see* ASA Mot. 5, ¶5. Indeed, the pronouncements *on their face* impose additional burdens, and the Department itself extended the compliance deadline because financial institutions "face[d]

10

significant challenges in implementing the documentation and disclosure requirements." AR 110. Stephens is plainly injured by these pronouncements.

###### B.    ASA's injuries are traceable to the challenged policies.

An injury is traceable when there is a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. As explained above, ASA's injuries are traceable to the pronouncements in FAQ 7 and FAQ 15. Specifically, Baird does not make certain rollover recommendations to investors because it would be subject to fiduciary requirements under the pronouncements in FAQ 7. ASA Mot. 4, ¶4. And Baird does not utilize the Exemption because of the burdensome and costly pronouncements in FAQ 15. ASA Mot. 5, ¶6. Similarly, Stephens is being forced to "expend[] additional time and resources" because of these pronouncements. ASA Mot. 5, ¶5.

The Department argues that ASA cannot satisfy the traceability element of standing because ASA "challenges only the FAQs" and the Department previously made "virtually identical" statements in the preamble to the Exemption. Dep't Opp. 26, 35. But the Department misreads ASA's complaint. ASA does not "challenge[] only the FAQs." *Id.* ASA challenges "the *policies referenced* in FAQ 7 and FAQ 15." Compl. 3, ¶9; *id.* at 17, ¶68; 19, ¶78; 21, ¶90; 22, ¶97 (alleging in Counts I-IV that "the *policies referenced* in the FAQ[s] must be held unlawful and set aside" (emphasis added)); *id.* at 23, ¶¶a-d (asking the Court to "[d]eclare that *the policies referenced* in FAQ 7 and FAQ 15" violate the APA;

"[e]njoin the Defendants from enforcing . . . the *policies referenced* in FAQ 7 and

FAQ 15"; and "[v]acate and set aside *the policies referenced* in FAQ 7 and FAQ 15"

(emphasis added)); *see also* ASA Mot. 29 ("[T]he Court should declare that the

Department's *pronouncements* in FAQ 7 and FAQ 15 are unlawful, enjoin the

Defendants from enforcing them anywhere in the Department's jurisdiction, and

vacate and set them aside." (emphasis added)). And the policies referenced in the

FAQs are the *same policies* that are in the preamble, as the Department repeatedly

admits. *See* Dep't Opp. 13, ¶4 ("materially indistinguishable"); *id.* at 3, 26, 29, 35-36

("identical"); *id.* at 26, 35 ("virtually identical").

The Department appears to believe that ASA's injuries aren't traceable

because ASA didn't frame its complaint and motion for summary judgment as

challenging "the pronouncements in the preamble." But again, ASA challenged

"the policies referenced in the FAQ[s]," and those are *the same* in both the FAQs

and the preamble. ASA's formulation was the most logical and efficient way to

describe its claims and the relief it is seeking. Rather than broadly reference the

preamble—a 69-page, single-spaced document discussing myriad unrelated

issues, *see* AR 1-69—ASA's formulation makes crystal clear the specific

Department policies that are injuring ASA and its members. The Department's

apparent theory—that ASA has no cognizable injuries because the Department

articulated the same policies in more than one place—is meritless.

The fact that the policies were first articulated in the preamble is irrelevant. The preamble has no more legal authority than the FAQs. In both documents, the Department is improperly "'amend[ing] a prior legislative rule'" outside of the notice-and-comment process. *Mendoza v. Perez*, 754 F.3d 1002, 1024 (D.C. Cir. 2014); *see N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 76 (1st Cir. 2018) ("[I]f the agency did establish its rule in the preamble, it is procedurally improper for the same reasons we deemed the FAQs announcement procedurally improper. . . . A rule stated in a preamble is subject to the same analysis of whether its articulated policy is interpretive or legislative, and if it is the latter, it is procedurally improper."). If anything, ASA's formulation of its claims and requested relief was the most appropriate because ASA points to the agency's most recent articulation of its policies. *See* Dep't Opp. 22 (FAQs "restate and synthesize" the agency's policies).

*Kimelman v. Garland*, 2022 WL 621401 (D.D.C. Mar. 3, 2022) is plainly distinguishable. There, the plaintiff sued federal officials seeking declaratory and injunctive relief from a federal statute that prohibited him from possessing a firearm. *Id.* at *1. The district court found no traceability because the plaintiff's injuries were "'the result of [an] independent action of [a] third party not before the court.'" *Id.* Specifically, because "New York law also prohibit[ed]" the plaintiff from purchasing a firearm, his harms were not "traceable to [the] federal law" he had challenged. *Id.* at *2. That is not the case here. ASA has challenged the *same*

policies being enforced by the *same* agency. ASA's injuries are traceable to the Department's policies.

### C.   ASA's injuries are redressable by a favorable decision.

An injury is redressable "when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010) (cleaned up). Here, ASA asks the Court to declare unlawful the policies referenced in the FAQs, enjoin the Department from enforcing, applying, or implementing them, and vacate and set them aside. Compl. at 23, ¶¶a-d. If the Court grants that relief, ASA's injuries will be redressed. Baird could provide the rollover recommendations to its investors that it wants to provide and could utilize the Exemption to engage in the activities that the Exemption explicitly permits. ASA Mot. 4-5, ¶¶4, 6. Stephens similarly could utilize the Exemption without expending time and resources complying with the unlawful pronouncements. ASA Mot. 5, ¶5. These are classic redressable injuries in APA claims. *See, e.g.*, *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 624 (4th Cir. 2018) (injury redressable by "enjoining the Secretary from enforcing the policy set forth in FAQ 33"); *Health Freedom Def. Fund, Inc. v. Biden*, 2022 WL 1134138, at *22 (M.D. Fla. Apr. 18) (injury redressable by declaring an agency action unlawful and vacating it).

That the preamble contains "virtually identical" language, Dep't Opp. 26, does not make ASA's injuries unredressable. As explained above, ASA challenges "the *policies referenced* in the FAQ[s]." And the policies in the FAQs are "identical" to the policies in the preamble. Dep't Opp. 3; *see also* ASA Mot. 10-12 (discussing the pronouncements in the preamble). If the Court declares these policies unlawful, enjoins the Department from enforcing them, and vacates and sets them aside, *see* Compl. 23, ¶¶a-d, ASA Mot. 28-29, there is no possible scenario in which the Department could continue to enforce the "identical" policies in the preamble. *See, e.g.*, *FEC v. Cruz*, 142 S. Ct. 1638, 1649-50 (2022) ("[I]f Section 304 [of the statute] is invalid and unenforceable . . . the agency's 20-day rule is as well. And the remedy appellees sought in the District Court—an order enjoining the Government from taking any action to enforce the [20-day rule]—would redress appellees' harm."); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017) ("[I]f a government action causes an injury, enjoining the action usually will redress [it]."); *compare with Kimelman*, 2022 WL 621401, at *3 (no redressability because a different state law enforced by a different sovereign would still prohibit the plaintiff from purchasing a firearm).

Last, even if the Court believes that ASA should have framed its requested relief differently (which it shouldn't), the Court is not powerless to redress ASA's injuries. "[F]ederal courts possess broad discretion to fashion an equitable remedy." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271,

1290 (11th Cir. 2015). Moreover, ASA sought "all other relief to which Plaintiff is entitled" and "all other relief that this Court deems just and proper." Compl. 23, ¶¶e-f; *Kursar v. TSA*, 751 F. Supp. 2d 154, 161 n.5 (D.D.C. 2010) (failure to seek "'the technically appropriate remedy'" was immaterial because the plaintiff requested "'other relief as [the Court] may deem just and proper'"). Nor can the Department claim any unfair surprise, because the policies in the preamble and the FAQs are "materially indistinguishable." Dep't Opp. 13, ¶4; *see also* ASA Mot. 10-12 (discussing the pronouncements in the preamble). Thus, nothing prevents the Court from declaring that the policies referenced in FAQ 7 and FAQ 15, including the "materially indistinguishable" policies in the preamble, violate the APA; enjoining the Defendants from enforcing these policies; and vacating and setting them aside.

## II.    The Department's pronouncements in FAQ 7 violate the APA.

### A.    The Department's pronouncements in FAQ 7 improperly amend the Department's rules without notice and comment.

The Department argues that the pronouncements in FAQ 7 comply with the APA because they are an "interpretive rule." That is incorrect. These pronouncements are an improper "legislative rule" because they effectively amend the Department's existing regulations, adopt a new position inconsistent with existing regulations, and otherwise effect a substantive change in existing law or policy. ASA Mot. 16-19. Indeed, the Department does not deny that it "never

considered one-time rollover recommendations to be a 'fiduciary' act." ASA Mot. 17 (citing prior Department statements); *see also id.* at 8-9. Nor does it deny that its new interpretation turns "countless one-time rollover recommendations into the acts of a fiduciary." ASA Mot. 13. These concessions alone should be dispositive. *Iowa League of Cities v. EPA*, 711 F.3d 844, 873 (8th Cir. 2013) (an interpretive rule "only remind[s] affected parties of *existing* duties" (cleaned up) (emphasis added)); *see also Gen. Motors Cop. v. Ruckelshaus*, 742 F.2d 1561, 1565-66 (D.C. Cir. 1984) (a rule was interpretative because it "simply restated the consistent practice of the agency"). The Department's "interpretation" unquestionably "[e]xpand[s] the footprint" of the five-part test, which is the "hallmark of [a] legislative rule[]." *Iowa League of Cities*, 711 F.3d at 873.

The Department's primary argument is that its rule is interpretative because it said it was. Dep't Opp. 31-34. But an agency's characterization of its rule as interpretive is merely "relevant"—nothing more. *Warshauer v. Solis*, 577 F.3d 1330, 1337 (11th Cir. 2009). Agencies receive no higher deference for the obvious reason that they could avoid the APA's notice-and-comment requirements simply by calling their legislative rules "interpretive." *See Chamber of Commerce v. OSHA*, 636 F.2d 464, 468 (D.C. Cir. 1980) ("[B]ureaucratic boilerplate often obscures the true purpose" and so "we do not classify a rule as interpretive just because the agency says it is."); *see, e.g., Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087

(9th Cir. 2003) ("While the DEA has characterized its rule as an interpretive rule, the court need not accept the agency characterization at face value.").

Indeed, there is reason for the Court to be skeptical here. In *Chamber of Commerce*, the Fifth Circuit vacated the Fiduciary Rule and strongly implied that the original 1975 rule is the only test consistent with the text of ERISA and the Code. *See Chamber of Commerce v. DOL*, 885 F.3d 360, 365, 369-79 (5th Cir. 2018) ("The 1975 regulation captured the essence of a fiduciary relationship known to the common law" and "Congress codified the touchstone of common law fiduciary status."); *id.* at 373-74 ("DOL's 1975 regulation flowed directly from contemporary understanding of 'investment advice for a fee'" and "[s]ubstantial case law has followed and adopted DOL's original dichotomy between mere sales conduct . . . and investment advice for a fee."). Rather than initiate a second (and likely unsuccessful) attempt to amend its rules, the Department chose to simply "reinterpret" them.[2]

It thus is relevant that the Department did not issue its new "interpretation" until *after* the Department's Fiduciary Rule was declared unlawful and enjoined by the Fifth Circuit—more than *four decades* after the five-part test was promulgated. And even now the Department continues to stress that it "believe[s]

---

[2] Contra the Department, there was no need for "regulatory clarity" on this issue following *Chamber of Commerce*. Dep't Opp. 33. *Chamber of Commerce* vacated the Fiduciary Rule and effectively reinstated the 1975 five-part test. ASA Mot. 9-10. There was no confusion about how to comply with the decades-old regulation.

that [the Fifth Circuit's] ruling was in error." Dep't Opp. 37. Courts are highly skeptical of an agency's new interpretation of its rules "when lots of time has passed between the rule's issuance and its interpretation—especially if the interpretation differs from one that has come before." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2412 (2019).

The Department notes that it received and responded to comments on its proposed "interpretation" of the 1975 regulation. Dep't Opp. 33. That is true, but irrelevant. As explained, an agency cannot effectively amend its rules through an "interpretation"—even if the agency provides notice of its new interpretation and responds to the comments it receives. ASA Mot. 18-19. Only *rules*—not preambles—go through the notice-and-comment process. *N.H. Hosp. Ass'n*, 887 F.3d at 76 ("Although the 2008 regulation was subject to notice and comment, the preamble, like the FAQs announcement, was not."); *see also York v. Wellmark, Inc.*, 2017 WL 11261026, at *17 & n.9 (S.D. Iowa 2017) (same). The Department never disputes this. Indeed, the Department cites *no case* in which an agency was permitted to effectively amend its rules through a new "interpretation" because the agency received and responded to comments about its proposal. Nor could it. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) (agencies must "use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance"). Thus, if the Court agrees that the pronouncements "effect[ed] a substantive change" or "'effectively amend[ed]'" the 1975 five-part

test, the Department violated the APA, regardless of whether it received and responded to comments. *Mendoza*, 754 F.3d at 1021, 1024.

The Department's errors are not harmless. To begin, courts rarely, if ever, find notice-and-comment errors to be harmless. *See Health Freedom Def. Fund, Inc.*, 2022 WL 1134138, at *16-18 (listing cases). "'The reason is apparent: . . . if the harmless error rule were to look solely to result, an agency could always claim that it would have adopted the same rule even if it had complied with APA procedures.'" *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1090 (9th Cir. 2011). "'To avoid gutting the APA's procedural requirements, harmless error analysis in administrative rulemaking must therefore focus on the process as well as the result.'" *Id.* Thus, an agency's mistakes are harmless only when they "'clearly had no bearing on the procedure used or the substance of the decision reached.'" *Health Freedom Def. Fund, Inc.*, 2022 WL 1134138, at *16 (quoting *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 215 (5th Cir. 1979)).[3]

Here, the Department's errors "'plainly affected the procedure used.'" *Id.* at *17 (quoting *U.S. Steel*, 595 F.2d at 215). If the Department wanted to change who is and is not a fiduciary, it needed to *amend its rules*. *Perez*, 575 U.S. at 101. That the Department received comments through a different procedure — the Department's

---

[3] The Department (at 36) mistakenly cites Judge Wilson's *concurrence* in *United States v. Dean*, 604 F.3d 1275, 1288 (11th Cir. 2010) (Wilson, J., concurring) as the majority opinion. As Judge Wilson recognized, his views on harmless error are "different from . . . [the] Eleventh Circuit[']s." *Id.* at 1290.

"interpretation" of its existing rules—is irrelevant. The Department's errors also affected the "'substance of the decision reached.'" *Health Freedom Def. Fund, Inc.*, 2022 WL 1134138, at *16 (quoting *U.S. Steel*, 595 F.2d at 215). If the Department had attempted to amend its rules, ASA would have filed comments disputing the Department's "legal basis" and policy justifications for doing so. *Id.* at *17. The Department's errors are not harmless.

### B.   The Department's pronouncements in FAQ 7 are arbitrary and capricious.

The Department asserts—with little analysis—that a one-time rollover recommendation satisfies the "regular basis" prong as long as there is a "mutual expectation of an ongoing relationship"—*i.e.*, the parties believe that more advice will be given in the future. Dep't Opp. 40. This argument fails. As explained, ASA Mot. 20-21, a one-time rollover recommendation cannot be made "on a regular basis *to the plan*" because the recommendation would be the last advice that the professional makes "to the plan." 29 C.F.R. §2510.3-21(c)(1) (emphasis added). Any further recommendations would be made "to the [new] plan." *Id.*[4]

In response, the Department appears to argue that the Court should read "the plan" in the five-part test to mean "the investor" or "the investor's assets." *See* Dep't Opp. 41-43. But the five-part test says nothing of the sort. Over and over,

---

[4] Contra the Department (at 41), ASA has never made the "strawman assertion" that "all one-time rollovers are covered" under the pronouncements in FAQ 7. *See* ASA Mot. 12-13.

the regulation states that fiduciary status is determined on a plan-by-plan basis. It requires, among other things, that the advice be rendered "on a regular basis *to the plan*" pursuant to a mutual agreement "between such person *and the plan* or a fiduciary *with respect to the plan*" and that such person will "render individualized investment advice *to the plan* based on the particular needs *of the plan*." 29 C.F.R. §2510.3-21(c)(1) (emphasis added). The Department's interpretation in FAQ 7 would eliminate the phrase "to the plan" throughout the five-part test, which no proper interpretation can do. *See United States v. One (1) Douglas A-26B Aircraft*, 662 F.2d 1372, 1374 n.6 (11th Cir. 1981) ("[A]ll words within a statute are intended to have meaning and should not be construed as surplusage"); *cf. LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 261 (2008) (Thomas, J., concurring) ("The plain text of § 409(a) [of ERISA], which uses the term 'plan' five times, leaves no doubt that § 502(a)(2) authorizes recovery only for the plan.").[5]

The Department argues that ASA's plain reading would lead to "absurd outcomes" because it could "'arbitrarily divid[e] an ongoing relationship'" when advice is "rendered to the exact same Retirement Investor (first as a Plan participant and then as IRA owner)." Dep't Opp. 43. As an initial matter, an

---

[5] *LaRue* does not support the Department's interpretation. There, the Supreme Court held that Section 502(a) of ERISA "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." 552 U.S. at 256. Nothing in the Court's holding or reasoning suggests that ERISA's use of the word "plan" really means the "investor's assets," irrespective of the plan. Indeed, there was only one "plan" at issue in *LaRue*, *id.* at 250, whereas a rollover involves *different plans*, ASA Mot. 21.

interpretation is not "absurd" unless it is "preposterous, one that 'no reasonable person could intend.'" *Texas Brine Co., LLC v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) (quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 237 (2012)). "[A]n absurdity is not mere oddity. The absurdity bar is high, as it should be." *Id.*; *see, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005) ("The omission may seem odd, but it is not absurd.").

Here, ASA's interpretation does not lead to "absurd outcomes." "The responsibility attaching to fiduciary status has been described as 'the highest known to law,'" *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003), and it arises only "with respect to the particular activity at issue," *Cotton*, 402 F.3d at 1277. It is not absurd that the five-part test would limit the imposition of this highest duty to only certain "'particular'" circumstances. *Id.* That a plain reading does not comport with the Department's policy preferences does not make the interpretation absurd. Indeed, the Department used to have the same reading as ASA. *See* ASA Mot. 8-9, 17.[6]

Moreover, as explained—with no response from the Department—the five-part test's use of the present tense cannot be ignored. The regulation says that a fiduciary "renders advice" on a regular basis—not "will render" advice or is

---

[6] The Department repeatedly states that "the five-part test for fiduciaries appears *both* in Title I and the Code." Dep't Opp. 43; *see also id.* 44 (stating that "the same five-part test appears in Title II"). That is incorrect. The five-part test is a *regulation*; it is neither in Title I nor the Code.

"expected to" render advice. ASA Mot. 21-22. By using the present tense, the regulation makes clear that the advice being given on a regular basis must be "'presently existing.'" ASA Mot. 22 (quoting *Bonnichsen v. United States*, 367 F.3d 864, 875 (9th Cir. 2004)); *see also Kilpatrick v. Kilpatrick*, 2013 WL 3874767, at *4 (Tex. App. 2013) ("A person is justified in placing confidence in the belief that another party will act in his best interest only when he is *accustomed* to being guided by the other party's judgment or advice and the parties have a *long association* in a business relationship and a personal friendship." (emphasis added)). Moreover, by imposing fiduciary status whenever there is a "mutual expectation" of additional advice, the Department would find the "regular basis" prong satisfied even if that expectation is wrong and *no further advice occurs*. ASA Mot. 22. That makes no sense and contradicts the meaning of "regular." *Id.* Regular means "recurring . . . at fixed, uniform, or normal intervals." "*Regular*," Merriam-Webster, https://bit.ly/3IUsKFm. Such "recurring" advice cannot possibly happen the *first time* advice is given. The Department has no response to any of these points. *See FTC v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1311 (S.D. Fla. 2013) ("[N]ew arguments in [a] reply brief . . . are forfeited.").

Last, the Department contends that *Chamber of Commerce* actually supports "the Department's view that in *some cases* advice to roll over assets from an ERISA plan to an IRA might meet the definition of fiduciary investment advice." Dep't Opp. 38 (emphasis in original). But the Department misinterprets *Chamber of*

24

*Commerce*. The Fifth Circuit found it "ordinarily *inconceivable*" that a one-time IRA rollover recommendation could be fiduciary advice. *Chamber of Commerce*, 885 F.3d at 380 (emphasis added). Regardless, even if the Fifth Circuit left open the possibility that certain one-time rollover advice could be fiduciary advice, that does not mean that the Department's pronouncements are permissible under the statutes or the five-part test. *See* ASA Mot. 22-23.

## III.   The Department's pronouncements in FAQ 15 violate the APA.

### A.   The Department's pronouncements in FAQ 15 improperly amend the Department's rules without notice and comment.

As explained, ASA Mot. 24-26, the pronouncements in FAQ 15 are procedurally improper because they "bind[] the public to a strict and specific set of obligations" that are contained nowhere in the text of the Exemption, *EPIC v. DHS*, 653 F.3d 1, 7 (D.C. Cir. 2011). The Department makes no effort to defend FAQ 15 as procedurally proper, instead focusing entirely on the pronouncements in FAQ 7. *See* Dep't Opp. 28-35. The Department's general assertions that "the FAQs are not a legislative rule" are insufficient. *Outley v. City of Chi.*, 407 F. Supp. 3d 752, 761 (N.D. Ill. 2019) ("'Perfunctory and undeveloped arguments . . . are waived.'") (citation omitted).[7]

---

[7] Nor would the Department's other defenses apply, even if the Department had made them. The Department never characterized its pronouncements in FAQ 15 as "interpreting" the Exemption, AR 1355, and a preamble does not go through notice and comment, *supra* 19. The pronouncements also effectively amend the Exemption. ASA Mot. 26-28.

The Department's only argument with respect to the pronouncements in FAQ 15 is that the Department's errors are harmless because "virtually identical" language was included in the preamble. That argument fails, as explained above. *Supra* 20-21. The Department's errors "plainly affected the procedure used" and the "'substance of [the] decision reached.'" *U.S. Steel Corp.*, 595 F.2d at 215. The Department put its pronouncements in the preamble and FAQs (not the Exemption itself), and it purposefully wrote the Exemption *not* to include these pronouncements. If the Department had complied with the APA, ASA could have argued that the pronouncements should not be mandatory because they impose "burdensome, expensive, and time-consuming" obligations. Palermo Decl. 4, ¶10.

Indeed, the Department appears to believe that as long as an agency puts its policies in the preamble—and not the actual rule—then its errors will *always* be harmless. This argument, if accepted, would "'gut[] the APA's procedural requirements,'" *Cal. Wilderness*, 631 F.3d at 1090, as an agency could enforce any statement made in a preamble as if it had the same authority as a duly promulgated rule. No case supports creating this loophole. *Cf. Shell Oil Co. v. EPA*, 950 F.2d 741, 750-52 (D.C. Cir. 1991) (that the EPA previously "considered and rejected the points raised by petitioners" does not make its errors harmless).

**B.      The Department's pronouncements in FAQ 15 are arbitrary and capricious.**

As explained, ASA Mot. 26-28, the Exemption requires advisors only to document the "specific reasons" that they believe a rollover is an investor's best interest. AR 66. That is it. Nothing in the Exemption "compels or logically justifies" the laundry list of obligations laid out in the pronouncements in FAQ 15. *Mountain States Health All. v. Burwell*, 128 F. Supp. 3d 195, 204 (D.D.C. 2015).

The Department contends that it "strains credulity to think that" an advisor could provide "specific reasons" for recommending a rollover without complying with the numerous documentation and investigation requirements articulated in FAQ 15. ASA Opp. 45. But the Department gives no evidence or reasoning for this bold assertion. Indeed, if it were so obvious, there would be no need for the Department's "guidance" on the issue. The Department made these pronouncements precisely because these documentation and investigation requirements were nowhere in the Exemption. Moreover, the Exemption's use of the word "specific" *supports* ASA's reading. Advisors need only provide their "precise" and "explicit" reasons—whatever they may be—for the recommendation. "*Specific*," Webster's New World College Dictionary (4th ed.), https://bit.ly/3IzKYfv.

Notably, the Department fails to address all the requirements ASA challenges. The pronouncements in FAQ 15 require that, if certain financial

information is unavailable, advisors must "make a reasonable estimation of expenses, asset values, risk, and returns based on publicly available information" and "document and explain the assumptions used and their limitations." AR 1355; *see* ASA Mot. 24-28. The Department has no argument for why these burdensome requirements are a fair interpretation of the Exemption. Any such argument in its reply is forfeited. *See IAB Mktg. Assocs.*, 972 F. Supp. 2d at 1311.

## IV.   The Department's interpretations are not entitled to deference

As a last-ditch effort, the Department asks the Court to defer to its interpretations. The Court should reject the invitation. As the Supreme Court recently emphasized, such deference rarely applies. "There was a time when a court faced with a regulation that seemed 'impenetrable on first read' might simply 'wave the ambiguity flag' and defer to the agency's interpretation. No longer." *United States v. U.S. Stem Cell Clinic, LLC*, 998 F.3d 1302, 1308 (11th Cir. 2021) (quoting *Kisor*, 139 S. Ct. at 2415). Under *Kisor*, "judicial deference is appropriate only if a regulation is 'genuinely ambiguous.'" *Id.* (quoting *Kisor*, 139 S. Ct. at 2415). As the Supreme Court emphasized, "when we use that term, we mean it—genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation." *Kisor*, 139 S. Ct. at 2414.

Before "declaring a regulation genuinely ambiguous," courts "must 'exhaust all the traditional tools of construction.'" *U.S. Stem Cell Clinic*, 998 F.3d at 1308 (quoting *Kisor*, 139 S. Ct. at 2415). The Court should "consider the parties'

textual arguments, giving the agency's view no special weight except to the extent it has the 'power to persuade.'" *Id.* (quoting *Kisor*, 139 S. Ct. at 2414). "[O]nly when that legal toolkit is empty and the interpretive question still has no single right answer can a judge conclude that it is 'more [one] of policy than of law.'" *Kisor*, 139 S. Ct. at 2415.[8]

As explained above, the relevant provisions here are not "genuinely ambiguous." Far from it. For decades, regulated entities understood the meaning of "regular basis to the plan." *See* ASA Mot. 8-9, 17. The Department issued its new "interpretation" not to alleviate confusion but to effectively change its rules following the Fifth Circuit's decision vacating the Fiduciary Rule. *Supra* 17-18. Nor is there any ambiguity about the straightforward requirement that an advisor document the "specific reasons" why a rollover is in the best interests of an investor. ASA Mot. 26-28. Because the provisions are not "genuinely ambiguous," the Court cannot defer to the Department's interpretations.

Yet even if the relevant provisions were "genuinely ambiguous" (which they aren't), the Department's interpretations still should not receive deference because they do not "fall 'within the bounds of reasonable interpretation,'" another prerequisite for receiving deference. *Kisor*, 139 S. Ct. at 2416. The

---

[8] The Department implies that its "interpretations" are entitled to deference because they were first contained in a preamble to the exemption. Dep't Opp. 46 n.10 (citing *AFL-CIO v. Donovan*, 757 F.2d 330, 343 (D.C. Cir. 1985)). *Donovan* says nothing of the sort. Nor does any such deference exist. *See generally Kisor*, 139 S. Ct. at 2412-18.

Department's interpretations are unreasonable because they have no basis in the text of the 1975 regulation or the Exemption. *Supra* 26-27. That the Department's interpretations align with what the agency believes is "wise as a policy matter" is plainly insufficient. *Loving v. IRS*, 742 F.3d 1013, 1022 (D.C. Cir. 2014).

Last, the Department's pronouncements in FAQ 7 receive no deference for the additional reason that they "'conflict[] with a prior'" construction of a decades-old regulation. *Kisor*, 139 S. Ct. at 2418. The Department does not dispute that its interpretation of "regular basis to the plan" used to be the exact opposite of what it is now. *See* ASA Mot. 8-9, 17. No deference is due "when lots of time has passed between the rule's issuance and its interpretation—especially if the interpretation differs from one that has come before." *Kisor*, 139 S. Ct. at 2412.

## CONCLUSION

For the foregoing reasons, the Court should grant ASA's motion for summary judgment and deny the Department's motion to dismiss and motion for summary judgment.[9]

---

[9] The Department does not dispute that, if ASA prevails on the merits of its claims, it should receive the relief it requests. *See* ASA Mot. 28-29; *IAB Mktg. Assocs.*, 972 F. Supp. 2d at 1311 ("[N]ew arguments in [a] reply brief . . . are forfeited.").

Respectfully submitted,

Dated: July 22, 2022

  /s/  J. Michael Connolly          

J. Michael Connolly (*pro hac vice*)
Steven C. Begakis (*pro hac vice*)
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com

*Counsel for Plaintiff American Securities Association*

31

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

 /s/  *J. Michael Connolly*

J. Michael Connolly (*pro hac vice*)